**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROSALIO CAMPOS, RAYMOND FIGUEROA, PATRICIA A. FISHER, SUSAN SADLOWSKI GARZA, JANE GOULD, LILLY MARTIN, ALFREDO MENDOZA, KEVIN P. MURPHY, JOANN PODKUL, and JEAN TOURVILLE, individually and on behalf of all other persons and entities similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CALUMET TRANSLOAD RAILROAD, LLC, DTE CHICAGO FUELS TERMINAL, LLC, GEORGE J. BEEMSTERBOER, INC., BEEMSTERBOER SLAG AND BALLAST CORPORATION, KCBX TERMINALS COMPANY, and KOCH CARBON, LLC,<br><br>*Defendants.* | Case No. 1:13-CV-08376 Consolidated with Case No. 1:13-CV-08499 and Case No. 1:13-CV-09038<br><br>Judge Manish S. Shah |

**KCBX TERMINALS COMPANY AND KOCH CARBON, LLC'S ANSWER TO
CONSOLIDATED CLASS ACTION COMPLAINT**

Defendants KCBX Terminals Company ("KCBX") and Koch Carbon, LLC ("Koch Carbon"), by and through their attorneys, hereby Answer the Consolidated Class Action Complaint ("Complaint"). Any allegation not explicitly admitted herein is denied. KCBX and Koch Carbon have reproduced the headings Plaintiffs used in their Complaint for ease of reference only. To the extent that the headings contain any allegations, Defendants deny the truth of those allegations.

**INTRODUCTION**

1.     This class action lawsuit relates to Defendants' failure to take reasonable and adequate measures to prevent petroleum coke ("petcoke") and coal dust, highly dangerous and

hazardous contaminants, stored outside and in vast uncovered piles at three "Storage Facilities" in Chicago, Illinois, from contaminating nearby communities.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 1 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon admit that pet coke and coal is staged outside in uncovered piles at 3259 East 100th Street, Chicago, Illinois and 10730 South Burley Avenue, Chicago, Illinois (collectively, the "Facility"), consistent with applicable laws and regulations. The remaining allegations of paragraph 1 are denied.

2.      Petcoke is a byproduct of the crude oil refining process. Petcoke contains high concentrations of carbon and sulfur, and can also contain trace elements of other metals, such as vanadium, nickel, chromium, and lead, which are possibly carcinogenic. Exposure to petcoke can cause skin, eye, or respiratory tract irritation. The Safety Data Sheet for petcoke warns that people should avoid accumulations of finely ground petcoke, recommends that people not breathe petcoke, and further advises that "[i]ndirect vented, dust-tight goggles are recommended if dust is generated when handling" petcoke. *See* Safety Data Sheet—Petroleum Coke, attached hereto as Exhibit A. Coal dust inhalation can cause chronic bronchitis, decreased pulmonary function, and emphysema, according to the Centers for Disease Control ("CDC"), U.S. Department of Health and Human Services. *See* CDC Guide – Coal Dust, attached hereto as Exhibit B.

**Answer:** KCBX and Koch Carbon deny that pet coke is a "byproduct" of the crude oil refining process. KCBX and Koch Carbon affirmatively state that pet coke is a "product" of crude oil refining. KCBX and Koch Carbon admit that pet coke contains carbon and sulfur, and can also contain trace elements of other metals, such as vanadium, nickel, chromium, and lead.

2

Exhibits A and B speak for themselves and therefore require no response. The remaining allegations of paragraph 2 are denied.

3.      Instead of safely disposing of or deconstructing the petcoke, Defendants have chosen to sell it and to distribute it for profit. Defendants' joint enterprise is an abnormally dangerous activity and consciously and deliberately disregards the known dangers of petcoke. It is an enterprise that despoils and degrades every environment it touches.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 3 directed to other Defendants, and therefore deny them. To the extent that the allegations of paragraph 3 relate to claims that have been dismissed pursuant to this Court's November 12, 2014 Order, no response is required. To the extent that a response may be required, KCBX admits to transloading pet coke. Koch Carbon admits to selling pet coke. The remaining allegations of paragraph 3 are denied.

4.      As a direct and foreseeable result of Defendants' failures, petcoke and coal dust have been blown throughout surrounding communities, contaminating the air and coating the homes, yards, schools, parks, and other property within affected areas, reducing the value of property located within the affected areas, and interfering with persons' and entities' reasonable use and enjoyment of such property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 4 directed to other Defendants, and therefore deny them. To the extent that the allegations of paragraph 4 state a legal conclusion, no response is required. The remaining allegations of paragraph 4 are denied.

**PLAINTIFFS**

5.     Plaintiff Lilly Martin is a citizen and resident of Chicago, Illinois, and is the owner of the property located at 10928 Mackinaw Avenue, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke as a result of Defendants' actions and inaction. Ms. Martin has lived in this home for approximately 15 years. While living in the home, Ms. Martin and her family have been exposed to the airborne petcoke and coal dust contamination of her home and property. Ms. Martin's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Martin's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Martin's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 5 directed to other Defendants, and therefore deny them.  KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 5 regarding Lilly Martin, and therefore deny them.  To the extent that the allegations of paragraph 5 state a legal conclusion, no response is required.  The remaining allegations of paragraph 5 are denied.

6.     Plaintiff Jean Tourville is a citizen and resident of Chicago, Illinois, and is the owner of the property located at 10933 Mackinaw Avenue, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust as a result of Defendants' actions and inaction. While living in the home, Ms. Tourville and her family have

been exposed to the airborne petcoke and coal dust contamination of her home and property. Ms. Tourville's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Tourville's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Tourville's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 6 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 6 regarding Jean Tourville, and therefore deny them. To the extent that the allegations of paragraph 6 state a legal conclusion, no response is required. The remaining allegations of paragraph 6 are denied.

7.      Plaintiff Jane Gould is a citizen and resident of Chicago, Illinois, and is the owner of the property located at 10117 South Avenue M, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust as a result of Defendants' actions and inaction. While living in the home, Ms. Gould and her family have been exposed to the airborne petcoke and coal dust contamination of her home and property. Ms. Gould's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Gould's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke and coal

dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Gould's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 7 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 7 regarding Jane Gould, and therefore deny them. To the extent that the allegations of paragraph 7 state a legal conclusion, no response is required. The remaining allegations of paragraph 7 are denied.

8. Plaintiff Alfredo Mendoza is a citizen and resident of Chicago, Illinois, and is the owner of the property located at 3348 East 106th Street, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust as a result of Defendants' actions and inaction. While living in his home, Mr. Mendoza and his family have been exposed to the airborne petcoke and coal dust contamination of his home and property. Mr. Mendoza's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Mr. Mendoza's home has been reduced, he has been forced to spend time and effort cleaning the petcoke and coal dust from his home and yard, and the air in and around Mr. Mendoza's residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Mr. Mendoza's ability to reasonably use and enjoy his home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 8 directed to other Defendants, and therefore deny them. KCBX and

Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 8 regarding Alfredo Mendoza, and therefore deny them. To the extent that the allegations of paragraph 8 state a legal conclusion, no response is required. The remaining allegations of paragraph 8 are denied.

9.     Plaintiff Kevin P. Murphy is a citizen and resident of Chicago, Illinois, and, together with his wife, Plaintiff Joann Podkul, is the owner of the property located at 9913 S. Avenue H, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust. Mr. Murphy and his family have been exposed to the airborne fugitive petcoke and coal dust contamination of his home and property. Mr. Murphy's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Mr. Murphy's home has been reduced, he has been forced to spend time and effort cleaning the petcoke and coal dust from his home and yard, and the air in and around Mr. Murphy's residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Mr. Murphy's ability to reasonably use and enjoy his home and surrounding yard.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 9 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 9 regarding Kevin P. Murphy, and therefore them. To the extent that the allegations of paragraph 9 state a legal conclusion, no response is required. The remaining allegations of paragraph 9 are denied.

10.     Plaintiff Joann Podkul is a citizen and resident of Chicago, Illinois, and, together with her husband, Plaintiff Kevin P. Murphy, is the owner of the property located at 9913 S. Avenue H, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust. Ms. Podkul and her family have been exposed to the airborne fugitive petcoke and coal dust contamination of her home and property. Ms. Podkul's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Podkul's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Podkul's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 10 directed to other Defendants, and therefore deny them.  KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 10 regarding Joann Podkul, and therefore deny them.  To the extent that the allegations of paragraph 10 state a legal conclusion, no response is required.  The remaining allegations of paragraph 10 are denied.

11.     Plaintiff Susan Sadlowski Garza is a citizen and resident of Chicago, Illinois, and is the homeowner of the property located at 10654 South Avenue G, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust. Ms. Garza and her family have been exposed to the airborne fugitive petcoke and coal dust contamination of her home and property. Ms. Garza's home, yard, and the surrounding

neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Garza's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Garza's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 11 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 11 regarding Susan Sadlowski Garza, and therefore deny them. To the extent that the allegations of paragraph 11 state a legal conclusion, no response is required. The remaining allegations of paragraph 11 are denied.

12. Plaintiff Patricia A. Fisher is a citizen and resident of Chicago, Illinois, and is the homeowner of the property located at 3457 East 106th Street, in Chicago, which is in a community that has been and is being damaged by the migration of petcoke and coal dust. Ms. Fisher has been exposed to the airborne petcoke and coal dust contamination of her home and property. Ms. Fisher's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Ms. Fisher's home has been reduced, she has been forced to spend time and effort cleaning the petcoke and coal dust from her home and yard, and the air in and around her residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Ms. Fisher's ability to reasonably use and enjoy her home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 12 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 12 regarding Patricia A. Fisher, and therefore deny them. To the extent that the allegations of paragraph 12 state a legal conclusion, no response is required. The remaining allegations of paragraph 12 are denied.

13.     Plaintiff Rosalio Campos is a citizen and resident of Chicago, Illinois, and is the owner of property located at 10748 S. Mackinaw Avenue, in Chicago, which is in a community that has been and is being damaged by the migration of fugitive petcoke and coal dust. Mr. Campos and his family have been exposed to the airborne fugitive petcoke and coal dust contamination of his home and property. Mr. Campos's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Mr. Campos's home has been reduced, he has been forced to spend time and effort cleaning the petcoke and coal dust from his home and yard, and the air in and around Mr. Campos's residence is polluted with petcoke. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Mr. Campos's ability to reasonably use and enjoy his home and surrounding yard.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 13 directed to Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 13 regarding Rosalio Campos, and therefore deny them. To the extent that the allegations of paragraph 13 state a legal conclusion, no response is required. The remaining allegations of paragraph 13 are denied.

14.     Plaintiff Raymond Figueroa is a citizen and resident of Chicago, Illinois, and is the owner of property at 10450 South Torrence Avenue, in Chicago, which is in a neighborhood that has been and is being damaged by the migration of petcoke and coal dust as a result of Defendants' actions and inaction. While living in his home, Mr. Figueroa and his family have been exposed to the airborne petcoke and coal dust contamination of his home and property. Mr. Figueroa's home, yard, and the surrounding neighborhood have been contaminated by petcoke and coal dust emanating from the Storage Facilities. As a result, the value of Mr. Figueroa's home has been reduced, Mr. Figueroa has been forced to spend time and effort cleaning the petcoke and coal dust from his home and yard, and the air in and around Mr. Figueroa's residence is polluted with petcoke and coal dust. The petcoke and coal dust contamination has interfered with and negatively affected and continues to negatively affect Mr. Figueroa's ability to reasonably use and enjoy his home and surrounding yard. When Mr. Figueroa, his family, or guests sit in outdoor chairs or brush up against outdoor property (such as cars, his residence, shrubbery, etc.), petcoke and coal dust residue is often left on their clothing items. Additionally, cars left outside often have petcoke and coal dust residue on them.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 14 directed to other Defendants, and therefore deny them.  KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 14 regarding Raymond Figueroa, and therefore deny them.  To the extent that the allegations of paragraph 14 state a legal conclusion, no response is required.  The remaining allegations of paragraph 14 are denied.

15.     At all times since moving into their homes, Plaintiffs reasonably expected that they and their families would have the full and unimpeded use and enjoyment of their homes and property.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 15, and therefore deny them.

16.     Plaintiffs live in fear, apprehension, and great distress, and have been denied and will continue to be denied the full use and enjoyment of their homes and property as a result of the actions and inaction of Defendants in allowing the petcoke and coal dust to contaminate their homes and property.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 16 directed to other Defendants, and therefore deny them.  KCBX and Koch Carbon also have insufficient knowledge to admit or deny the allegation that "Plaintiffs live in fear, apprehension, and great distress" and therefore deny it.  The remaining allegations of paragraph 16 are denied.

**DEFENDANTS**

17.     Defendant KCBX is a North Dakota corporation, located and doing business at 3259 East 100th Street, Chicago, Illinois. KCBX owns, operates, maintains, and/or controls a storage and transfer terminal at that location, situated on the western bank of the Calumet River ("100th Street Terminal"), and a storage transfer terminal located at 10730 South Burley Avenue, situated on the east bank of the Calumet River ("Burley Terminal"). KCBX stores large quantities of petcoke and coal dust at both of these terminals. KCBX is a subsidiary of Koch Industries, Inc.

**Answer:**  KCBX denies that it "owns" the Burley Terminal.  KCBX also denies that it stores "large quantities of petcoke and coal dust at both of these terminals."  KCBX further denies that KCBX is a subsidiary of Koch Industries, Inc.  KCBX affirmatively states that Koch Minerals, LLC is the parent company of KCBX.  Koch Minerals, LLC is wholly owned by Koch Resources, LLC, which is wholly owned by Koch Industries, Inc.  KCBX admits the remaining allegations in paragraph 17.

Paragraph 17 contains no allegations directed to Koch Carbon.  Therefore, no response is required from Koch Carbon.

18.     Defendant BP is a Maryland corporation headquartered in Houston, Texas. BP engages in the exploration, development, production, refining, marketing, and sale of oil and natural gas. Petcoke is a byproduct of BP's oil refinery process.

**Answer:**  The allegations of paragraph 18 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order.  Further, paragraph 18 contains no allegations directed to KCBX or Koch Carbon.  Therefore, no response is required.

19.     Defendant KMR is a Delaware limited liability company that owns the property on which KCBX's Burley Terminal is situated, as well as rail tracks and rail facilities on and adjacent thereto. KMR purchased this property from Defendant DTE in December 2012. KMR is a subsidiary of Koch Industries, Inc.

**Answer:**  The allegations of paragraph 19 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order.  Further, paragraph 19 contains no allegations directed to KCBX or Koch Carbon.  Therefore, no response is required.

20.     Defendant Beemsterboer is an Indiana limited liability company located and doing business at 2900 East 106th Street, in Chicago, Illinois.  Beemsterboer owns, maintains,

and/or controls a storage and transfer terminal at that location, situated on the western bank of the Calumet River, on which large quantities of petcoke and coal dust have been stored.

**Answer:** Paragraph 20 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

21. Defendant Beemsterboer Slag is an Indiana limited liability company located and doing business at 2900 East 106th Street, in Chicago, Illinois. Beemsterboer Slag owns, maintains, operates and/or controls a storage and transfer terminal at that location, situated on the western bank of the Calumet River, on which large quantities of petcoke and coal dust have been stored.

**Answer:** Paragraph 21 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

22. Defendant DTE is a Michigan limited liability company located at 414 South Main Street, in Ann Arbor, Michigan. Until December 2012, DTE owned, operated, maintained, and/or controlled the Burley Terminal and the property on which the Burley Terminal is located, and stored uncovered petcoke and coal dust at that location.

**Answer:** Paragraph 22 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

23.     Defendant Calumet Transload is an Illinois limited liability company with its principal office located at the Burley Terminal. Until February 8, 2007, Calumet Transload owned, operated, maintained, and/or controlled the Burley Terminal and the property on which the Burley Terminal is located. Upon information and belief, Calumet Transload continues to operate, maintain, and control a storage and transfer terminal at that location, on which large quantities of petcoke and coal dust are stored.

**Answer:**   Paragraph 23 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

24.     Defendant Koch Carbon is a Delaware limited liability company located and doing business at 106th Street and the Calumet River, at or near the Beemsterboer Terminal. On information and belief, Koch Carbon owns, maintains, and/or controls a substantial amount of petcoke and coal dust that is stored and transferred at the 100th Street Terminal, Burley Terminal, and Beemsterboer Terminal.

**Answer:**   Koch Carbon denies that it owns, maintains, and/or controls "a substantial amount of petcoke and coal dust."  Koch Carbon also denies that it is "located and doing business" at the Beemsterboer Terminal.  Koch Carbon admits that it owned pet coke that was transloaded at the Beemsterboer Terminal, prior to the closure of the Terminal.  Koch Carbon admits the remaining allegations in paragraph 24.

Paragraph 24 contains no allegations directed to KCBX.  Therefore, no response is required from KCBX.

## VENUE AND JURISDICTION

25.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from one or more of Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), excluding interest and costs.

**Answer:** Paragraph 25 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 25, and any wrongdoing.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants committed the wrongful conduct against members in this district, which is where most, if not all, Class members reside.

**Answer:** Paragraph 26 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 26, and any wrongdoing.

## FACTUAL BACKGROUND

27.     Petcoke is a black powdery byproduct of the crude oil refining process.

**Answer:** KCBX and Koch Carbon deny that pet coke is a "byproduct" of the crude oil refining process. KCBX and Koch Carbon affirmatively state that pet coke is a "product" of crude oil refining. KCBX and Koch Carbon further deny that pet coke is "powdery." KCBX and Koch Carbon admit the remaining allegations in paragraph 27.

28.     Petcoke is principally used as fuel in power plants to generate electricity, by the smelting industry to create aluminum and steel, and as a fuel for cement making.

**Answer:** KCBX and Koch Carbon admit the allegations of paragraph 28.

29.     Petcoke and coal dust are lightweight and dust-like. As a result, petcoke and coal dust are susceptible to being transported by wind and inhaled.

**Answer:** KCBX and Koch Carbon admit that dust from pet coke and coal may be transported by wind or inhaled. The remaining allegations of paragraph 29 are denied.

30.     The burning of petcoke is even dirtier than the burning of coal. Petcoke emits 5 percent to 10 percent more carbon dioxide than coal on a per-unit of energy basis and a ton of petcoke yields an average of 53.6 percent more carbon dioxide than a ton of coal. Additionally, "[u]nrefined petcoke contains 50 percent to 300 percent more sulfur by volume than coal."

**Answer:** The cited articles speak for themselves and therefore no response is required. The remaining allegations of paragraph 30 are denied.

31.     On account of environmental concerns, the Environmental Protection Agency no longer issues new permits allowing for the use of petcoke in generating electricity. In 2012, approximately 0.2 percent of all power in the United States was generated as a result of the burning of petcoke.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations in paragraph 31, and therefore deny such allegations.

32.     A substantial market for petcoke exists among countries with less stringent clean air regulations. In 2012, over 80 percent of all petcoke produced by refineries in the United States was exported. The largest foreign markets for U.S. petcoke exports are China, Japan, India, Brazil, Turkey, and Mexico.

**Answer:** KCBX and Koch Carbon admit that a substantial market exists for pet coke in the United States and as an export, and that the largest foreign markets for U.S. petcoke exports

17

include China, Japan, India, Brazil, Turkey, and Mexico. KCBX and Koch Carbon have insufficient knowledge to either admit or deny the remaining allegations in paragraph 32, and therefore deny them.

33. The production of petcoke has boomed since 2010. This boom in petcoke production is attributable to U.S. refineries processing increased amounts of heavy oil extracted from the Canadian oil sands. In 2010, U.S. refineries exported 20 million barrels of petcoke. In 2012, U.S. refineries exported over 184 million barrels of petcoke.

**Answer:** KCBX and Koch Carbon admit that according to the U.S. Energy Information Administration, United States refineries exported 184,167,000 barrels of pet coke in 2012. KCBX and Koch Carbon deny the remaining allegations of paragraph 33. KCBX and Koch Carbon affirmatively state that according to the U.S. Energy Information Administration, United States refineries exported 163,868,000 barrels of pet coke in 2010.

34. Canadian oil sands contain an unconventional form of heavy oil that is too heavy or thick to flow or be pumped without being diluted or heated and typically contains high concentrations of carbon, sulfur, and certain metals.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 34 regarding the meaning of "Canadian oil sands" as used therein, and therefore deny them.

35. Refining this heavy oil into light transport fuel requires separating a substantial portion of the carbon embedded in such material. A byproduct of this process is petcoke.

**Answer:** KCBX and Koch Carbon deny that pet coke is a "byproduct" and affirmatively state that pet coke is a "product" of crude oil refining. KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 35 regarding the

meaning of "this heavy oil," "light transport fuel," and "substantial portion" as used therein, and therefore deny them.

36.     The production of petcoke by U.S. refineries is expected to continue to escalate dramatically in the near future as U.S. refineries continue to process increasing amounts of bitumen extracted from the Canadian oil sands. One report estimates that the "proven tar sands [oil] reserves of Canada will yield roughly 5 billion tons of petcoke—enough to fully fuel 111 U.S. coal plants to 2050."

**Answer:** The cited article speaks for itself and therefore no response is required. KCBX and Koch Carbon have insufficient to knowledge to either admit or deny the remaining allegations of paragraph 36, and therefore deny them.

37.     In order to refine and process Canadian Extra Heavy Oil ("CXHO"), BP undertook an approximately $4 billion update and expansion of its oil refinery in Whiting, Indiana. This project was identified by BP as Operation Canadian Crude in its Fugitive Air Permit 25484-2008 (1-30-2008) (hereinafter "the Permit" and attached hereto as Exhibit C).

**Answer:** The allegations of paragraph 37 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 37 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

38.     The centerpiece of the refinery expansion was the construction of a new coker (coker #2), the largest coker in North America. According to the Permit, the maximum rate of petcoke production at the refinery would go from 2,000 to 6,000 tons per day.

**Answer:** The allegations of paragraph 38 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 38 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny such allegations.

39. The Permit specifically detailed precautions to be taken regarding the handling, storage, and transfer of the petcoke at the Whiting refinery:

> Potential fugitive dust emissions may result from coke handling, storage and transfer operations. The coke handling system will be designed to minimize fugitive dust emission from the coke handling process[…]When the coking process is complete [and following the coke's watering and dewatering][…]it is moved by a bridge crane to a partially enclosed crusher. From the crusher the coke is conveyed in an enclosed conveyor to a transfer tower. The coke is then transferred using a series of enclosed conveyors to either the day bin for loadout into rail cars, or if necessary to the enclosed coke storage pile for temporary storage.

**Answer:** Exhibit C speaks for itself and therefore no response is required. However, KCBX and Koch Carbon affirmatively state that Plaintiffs have not accurately copied the language in Exhibit C.

40. Coker #2 became fully operational in the first quarter of 2014. The new coker has increased the maximum amount of petcoke that can be produced by the BP Whiting refinery from 700,000 tons per year to approximately 2.2 million tons per year.

**Answer:** The allegations of paragraph 40 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 40 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

41.     BP generally stores approximately five days' production of petcoke at the BP Whiting Refinery. "Under [BP's] federal permit and consent decree with the U.S. EPA, the waste [Petcoke] is surrounded by 40-foot walls; an enclosed conveyor and loading system is equipped with wind screens and water sprayers to keep dust down."

**Answer:**   The allegations of paragraph 41 relate to a party that has been dismissed pursuant to this Court's November 12, 2014 Order.  Also, paragraph 41 contains no allegations directed to KCBX or Koch Carbon.  Further, the cited article speaks for itself.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

42.     After approximately five days, petcoke produced at the BP Whiting Refinery is transported to the Storage Facilities. The Storage Facilities also receive petcoke from other sources.

**Answer:**   KCBX and Koch Carbon admit that pet coke produced at the BP Whiting Refinery is transported to the Facility, and that the Facility receives pet coke from other sources. KCBX and Koch Carbon have insufficient knowledge to either admit or deny the remaining allegations in paragraph 42, and therefore deny them.

43.     The Storage Facilities are located near densely populated residential neighborhoods. Three elementary schools (Gallistel, March, Taylor) are within one mile of the 100th Street Terminal; three elementary schools (Addams, Bright, Washington) and one high school (Washington) are located within one mile of the Burley Terminal; and two elementary schools (Burnham, Marsh) are located within a mile of the 2900 East 106th Street facility. A number of churches, parks, and public playgrounds are also located in close proximity to the Storage Facilities. (*See* Exhibit D – map and indices of the relevant location).

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 43 regarding the meaning of "near densely populated residential neighborhoods," "[a] number," and "close proximity," as used therein, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the remaining allegations of paragraph 43 with regards to the distances between the Storage Facilities and the land uses described, and therefore deny them.

44.     At the Storage Facilities, petcoke and coal dust was and continues to be stored outside in large uncovered piles. The concerned piles of petcoke and coal dust are sometimes as high as five stories. As of September 20, 2013, KCBX was storing approximately 350,000 tons of petcoke and coal at its site. This is so despite the fact that BP is required to enclose the petcoke at its Whiting refinery.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 44 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to admit or deny the allegations of paragraph 44 relating to BP, and therefore deny them. KCBX and Koch Carbon admit that pet coke and coal is staged outside in uncovered piles at the Facility, in piles up to 30 feet high, consistent with applicable laws and regulations. The remaining allegations of paragraph 44 are denied.

45.     The Storage Facilities are located in a community that is environmentally scarred and vulnerable from serving as a center of steel production and petroleum refining for decades and which is at the center of a national environmental restoration campaign known as the Millennium Reserve—Calumet Core, as described by Illinois Governor Patrick Quinn in his 2013 Executive Order (attached as Exhibit E). The Executive Order notes:

- Calumet Core has a rich industrial heritage and associated labor culture that led to a richly diverse and vibrant immigrant community.

- Residents of the Millennium Reserve: Calumet Core have a justifiable pride in their role in building the United States of America.

- Calumet Core[…] now includes significant areas of existing or former industrial and manufacturing land that suffers from contamination, abandonment and fragmented ownership that stands in the way of economic revitalization in the area.

- The area within the Millennium Reserve: Calumet Core boundary has been economically challenged by the decline of heavy industry, the loss of jobs and that there is an opportunity to create new jobs in the land conservation, brownfield remediation, and public recreation industries.

**Answer:** Exhibit E speaks for itself and therefore no response is required. However, KCBX and Koch Carbon affirmatively state that Plaintiffs have not accurately copied the language of Exhibit E. The remaining allegations of paragraph 45 are denied.

46. On October 24, 2013, the Illinois Environmental Protection Agency ("IEPA") issued a violation notice ("Violation Notice") to Beemsterboer, alleging violations of environmental laws, regulations, or permits. (*See* Violation Notice, attached hereto as Exhibit F). The Violation Notice further advised that, "[d]ue to the nature and seriousness of the alleged violations," Beemsterboer's violations may require the "involvement of a prosecutorial authority for purposes that may include, among others, the imposition of statutory penalties." (*See* Exhibit F, p.1).

**Answer:** Paragraph 47 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. Further, Exhibit F speaks for itself. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

47. Beemsterboer is charged with committing the following violations of the Illinois Environmental Protection Act ("Act"), and the rules and regulations promulgated under the authority of the Act:

a) Beemsterboer failed to obtain construction permits prior to the construction of a screener and modification to the materials handled at the facility by handling materials other than coal;

b) Beemsterboer failed to obtain an operating permit prior to the operation of the screener and allowing the handling [of] material other than coal;

c) Beemsterboer failed to develop, maintain, amend, and submit to the Illinois Environmental Protection Agency an operating program designed to significantly reduce fugitive particulate matter emissions;

d) Beemsterboer failed to develop, maintain, and submit a PM-10 contingency measure plan to the Illinois Environmental Protection Agency;

e) Beemsterboer failed to submit an Annual Emissions Report to the Illinois Environmental Protection Agency for calendar year 2012, and may have failed to submit complete, true, and accurate Annual Emission Reports for at least calendar years 2000 through 2011; and

f) Beemsterboer caused, threatened, or allowed the discharge of particulate matter into the atmosphere generated during material handling and storage operations causing or tending to cause air pollution.

(*See* Exhibit F, pp. 3–4).

**Answer:** Paragraph 48 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. Further, Exhibit F speaks for itself. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations, and therefore deny them.

48. In November 2013, the Attorney General of the State of Illinois, on her own motion and at the request of the Illinois Environmental Protection Agency, filed a Complaint (attached hereto as Exhibit G) against one of the defendants herein, KCBX Terminals Company, regarding the storage and distribution of petcoke at the Burley Terminal. The Complaint alleges the following:

- Paragraph 8, in relevant part – "On September 20, 2013, and such other dates better known to the Defendant, the Defendant had approximately 350,000 tons of petroleum coke and coal at the Site."

24

- Paragraph 9 – "At all times relevant to the Complaint, the Defendant has left the petroleum coke and coal piles at the Site uncovered and open to the environment."

- Paragraph 13 – "Petroleum coke and coal dust is a type of particulate matter that can be emitted into the environment and carried by the wind into areas surrounding the Site. When petroleum coke and coal dust is blown off the Site into the nearby residential neighborhood, the dust gets into people's eyes, is inhaled and coats people's homes, outside play areas, cars and other personal property, thereby threatening human health and unreasonably interfering with the local residents' enjoyment of life and property."

- Paragraph 14 – "Particulate matter, including petroleum coke and coal dust, may be inhaled into the lungs and cause serious health problems, including aggravated asthma, decreased lung function, increased respiratory symptoms such as difficulty in breathing, irregular heartbeat, nonfatal heart attacks and premature death in people with heart or lung disease."

**Answer:** KCBX admits that in November 2013, the Attorney General of the State of Illinois, on her own motion and at the request of the Illinois Environmental Protection Agency, filed a Complaint against KCBX. That Complaint, at Exhibit G, speaks for itself, and therefore no response is required. However, KCBX denies any wrongdoing alleged in Exhibit G.

Paragraph 48 contains no allegations directed to Koch Carbon. Therefore, no response is required from Koch Carbon.

49. The emission and migration of petcoke and coal dust emanating from the Storage Facilities has negatively affected Plaintiffs' and Class members' ability to engage in and reasonably enjoy outdoor activities. For example, on windy days, Plaintiffs and Class members have sometimes been forced to stay inside because of the danger and inconvenience posed by petcoke and coal dust contaminated air. Backyard swimming pools use is limited because the petcoke and coal dust contaminates the water and attaches to the skin of those who swim in the contaminated water. Backyard barbeques and picnics are also difficult, because the petcoke and coal dust gets into the food and beverages, which must then be discarded.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 49 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 49 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 49, as well as any wrongdoing, are denied.

50. Petcoke and coal dust from the Storage Facilities have settled on Plaintiffs' and Class members' property, including their homes, vehicles, lawn furniture, outdoor recreation equipment, pools, holiday decorations, and other possessions, leaving an unsightly and dangerous black coating.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 50 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 50 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 50, as well as any wrongdoing, are denied.

51. Petcoke and coal dust from the Storage Facilities has also infiltrated the interior of Plaintiffs' and Class members' homes through windows, vents, chimneys, air conditioners, and doors, and has been tracked in their homes through the entry of people and pets. Plaintiffs and Class members have, at times, kept their windows closed to prevent petcoke and coal dust from invading their homes, depriving them of the reasonable full use and enjoyment of their home, and requiring them to incur the expense of running air conditioners and replacing air filters more often than they otherwise would.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 51 directed to other Defendants, and therefore deny them. KCBX

26

and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 51 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 51, as well as any wrongdoing, are denied.

52.     Petcoke is dangerous to property, as it is highly flammable and explosive, and can be ignited by heat. (*See* Exhibit A, pp.1-5). The expenditure of time and money washing and rinsing the exterior and interior of homes, furnishings, vehicles, and other real and personal property has been required to prevent potentially hazardous aggregations of petcoke.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 52 regarding the expenditure of time and money, and therefore deny them. Exhibit A speaks for itself and requires no response. The remaining allegations of paragraph 52, as well as any wrongdoing, are denied.

53.     Plaintiffs and Class members have been required to wash the unsightly black petcoke and coal dust off their homes, vehicles, and other property to maintain an acceptable aesthetic condition and prevent their property from acquiring an unseemly smell as a result of the high sulfur content of petcoke emanating from the Storage Facilities.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 53 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 53 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 53, as well as any wrongdoing, are denied.

54.     Sometimes, the petcoke and coal dust emanating from the Storage Facilities cannot be washed off of Plaintiffs' and Class members' property, leaving stains on Plaintiffs' and Class members' property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 54 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 54 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 54, as well as any wrongdoing, are denied.

55. Not all of the property of Plaintiffs and Class members can be salvaged. Indeed, petcoke and coal dust emanating from the Storage Facilities ruins perishable items such as food and beverages, stains clothing, carpeting, upholstery and other furnishings, clogs air and water filters, and otherwise destroys or devalues Plaintiffs' and Class members' property. Therefore, Plaintiffs and Class members are required to replace these items more frequently than they otherwise would.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 55 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of paragraph 55 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 55, as well as any wrongdoing, are denied.

56. Plaintiffs and Class members have expended and, unless protected from petcoke and coal dust emanating from the Storage Facilities in the future, will expend in the future large sums of money for replacing, repairing, and/or remediating the damage to their property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 56 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon also have insufficient knowledge to either admit or deny the allegations of

28

paragraph 56 regarding Plaintiffs and Class members, and therefore deny them. The remaining allegations of paragraph 56, as well as any wrongdoing, are denied.

57.     Defendants have refused, and continue to refuse, to take sufficient corrective measures, such as covering or enclosing the piles of petcoke and coal, which would reduce the amount of dust being carried off those piles and contaminating the real and personal property of Plaintiffs and Class members. Absent cessation of the complained-of activity, Plaintiffs and Class members will suffer irreparable harm.

**Answer:**  KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 57 directed to other Defendants, and therefore deny them. KCBX and Koch Carbon admit that pet coke and coal is staged outside in uncovered piles at the Facility, consistent with applicable laws and regulations. KCBX affirmatively states that it implements extensive and comprehensive dust suppression measures at the Facility. The remaining allegations of paragraph 57, and any wrongdoing, are denied.

58.     Other facilities that store petcoke have enclosed it. For example, the piles of petcoke at the Port of Los Angeles were completely covered in 2002 due to the hazardous nature of petcoke that was blowing off those piles into the community. (*See* May 17, 2002 Los Angeles Times article, attached hereto as Exhibit H). Furthermore, BP surrounds the piles of petcoke that it produces at its Whiting facility with 40-foot walls before it ships the petcoke off of its premises.

**Answer:**  KCBX and Koch Carbon admit that a small number of facilities that stage pet coke have enclosed it. Exhibit H speaks for itself and requires no response. KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 58 regarding BP, and therefore deny them. The remaining allegations of paragraph 58 are denied.

29

## CLASS ALLEGATIONS

59.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of a class consisting of:

> All persons and entities that owned property located within the Affected Area at any time during the period from October 31, 2008 to present.

**Answer:**  Paragraph 59 sets forth Plaintiffs' characterization of their own Complaint and

proposed class and thus does not require a response.  To the extent that a response may be

required, the allegations in paragraph 59 are denied.  KCBX and Koch Carbon further deny that

this Complaint may be maintained as a class action.

60.     Specifically excluded from the Class are Defendants and any of their officers, any

entity in which Defendants have a controlling interest or which has a controlling interest in

Defendants, Defendants' legal representatives, and any municipal or governmental entity.

**Answer:**  Paragraph 60 sets forth Plaintiffs' characterization of their own Complaint and

proposed class and thus does not require a response.  To the extent that a response may be

required, the allegations in paragraph 60 are denied.  KCBX and Koch Carbon further deny that

this Complaint may be maintained as a class action.

61.     Members of the Class are so numerous that joinder is impracticable. While the

exact number of Class members is unknown to Plaintiffs, it is believed that the Class is

comprised of at least thousands of members.

**Answer:**  The allegation in paragraph 61 regarding the impracticability of joinder is a

legal conclusion, to which no response is required.  KCBX and Koch Carbon have insufficient

knowledge to either admit or deny the allegations of paragraph 61 regarding the number of Class

members, and therefore deny them.  KCBX and Koch Carbon deny that this Complaint may be

maintained as a class action.

62.     Common questions of law and fact exist as to all members of the Class. The resolution of these common questions of law and fact will drive the resolution of the litigation.

**Answer:**  Paragraph 62 states legal conclusions, to which no response is required.  To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 62, and deny that this Complaint may be maintained as a class action.

63.     Common legal and factual questions that will drive the resolution of the litigation include, but are not limited to:

a)  Whether Defendants released or discharged petcoke waste during the process of operating the Whiting Refinery;

b)  Whether Defendants' conduct in the refining, manufacturing, handling, transporting, or storing of oil byproducts resulted in the release, discharge, or spilling of petcoke waste;

c)  Whether Defendants had knowledge of the petcoke and coal dust's likelihood to contaminate Plaintiffs' and Class members' property;

d)  Whether Defendants' manufacturing and distributing petcoke as alleged constituted an abnormally dangerous activity;

e)  Whether Defendants' conduct in producing, distributing, transporting, and storing petcoke as alleged was willful and wanton;

f)  Whether petcoke waste and coal dust released, discharged, or spilled by Defendants has trespassed on or contaminated Plaintiffs' and Class members' property;

g)  Whether Defendants' manufacturing, distributing, handling, and release of petcoke and coal dust as alleged constituted a private nuisance;

h)  Whether Defendants' joint efforts in manufacturing, handling, and distribution of petcoke as alleged constituted a civil conspiracy for which they are liable;

i)  Whether Defendants have created an unnatural dispersion or distribution of petcoke waste and coal dust resulting in contamination of Plaintiffs' and Class members' property; and

j)  Identification of the precise area of impact of the contamination caused by Defendants.

**Answer:** Paragraph 63 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 63, and deny that this Complaint may be maintained as a class action.

64.     Plaintiffs' claims are typical of the members of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Defendants' conduct alleged herein. Plaintiffs and the Class have been similarly or identically harmed by the same unlawful conduct of Defendants.

**Answer:** Paragraph 64 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 64, and any wrongdoing. KCBX and Koch Carbon also deny that this Complaint may be maintained as a class action.

65.     Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

**Answer:** Paragraph 65 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 65 regarding the interests of Plaintiffs, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 65, and deny that this Complaint may be maintained as a class action.

66.     The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and

expense of individual prosecution of these claims against these large corporate Defendants, especially in comparison with the maximum individual recovery to which each Class member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. It also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

**Answer:** Paragraph 66 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 66 regarding Class members' resources, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 66, and deny that this Complaint may be maintained as a class action.

## CLAIMS FOR RELIEF

## COUNT I – PRIVATE NUISANCE

### (Against Storage/Distribution Defendants)

67.     Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

68.     The failure of the Storage/Distribution Defendants to reasonably secure petcoke and coal dust at the Storage Facilities resulted in petcoke and coal dust being blown onto and invading property owned by Plaintiffs and the other Class members.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 68 directed to other Defendants, and therefore deny them. The remaining allegations of paragraph 68 are denied.

69. The invasion and contamination was substantial and unreasonable, as the petcoke and coal dust coated and contaminated Plaintiffs' and the other Class members' homes, yards, and other property, and polluted the air supply in and around such property. The invasion and contamination of Plaintiffs' and the Class' property was a direct and foreseeable result of Storage/Distribution Defendants' willful and wanton failure to prevent the discharge of petcoke and coal dust from the Storage Facilities.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 69 directed to other Defendants, and therefore deny them. Paragraph 69 states legal conclusions, to which no response is required. To the extent that paragraph 69 contains any factual allegations, KCBX and Koch Carbon deny them.

70. Storage/Distribution Defendants knew or should have known that the failure to implement reasonable and adequate measures to prevent petcoke and coal dust from blowing out of the Storage Facilities would result in petcoke and coal dust contaminating nearby communities.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 70 directed to other Defendants, and therefore deny them. Paragraph 70 states legal conclusions, to which no response is required. To the extent that paragraph 70 contains any remaining factual allegations, KCBX and Koch Carbon deny them.

71. Plaintiffs and the Class have suffered injury as a result of Storage/Distribution Defendants' actions and inactions, because the value of Plaintiffs' and Class members' property

has been diminished, the migration of petcoke and coal dust from the Storage Facilities has interfered with Plaintiffs' and Class members' reasonable use and enjoyment of their property, and Plaintiffs and Class members have been required to expend time, effort, and monies removing petcoke from their property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 71 directed to other Defendants, the value of Plaintiffs' and Class members' property, or the expenditure of time, effort, or monies, and therefore deny them. Paragraph 71 states legal conclusions, to which no response is required. To the extent that paragraph 71 contains any remaining factual allegations, KCBX and Koch Carbon deny them.

72. Storage/Distribution Defendants' unlawful conduct was perpetrated with a reckless and outrageous indifference to the high risk of harm posed by such conduct and with a conscious indifference to the rights and safety of Plaintiffs and the other Class members.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 72 directed to other Defendants, and therefore deny them. Paragraph 72 states legal conclusions, to which no response is required. To the extent that paragraph 72 contains any remaining factual allegations, KCBX and Koch Carbon deny them.

## COUNT II – PRIVATE NUISANCE

### (Against BP)

73. Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

74. BP acknowledges in the Permit that the handling, transfer, and storage of petcoke may result in fugitive dust emissions. *See* Exhibit C. Therein, BP recognizes the dangers of

storing, handling, and transferring petcoke and the necessity that such operations be conducted in as closed an environment as possible.

**Answer:** The allegations of paragraph 74 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 74 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 74 regarding BP, and therefore deny them. KCBX and Koch Carbon deny any remaining allegations in paragraph 74, and any wrongdoing.

75. Despite this knowledge, BP has actively participated in and allowed petcoke to be transported, handled, and stored in such a manner that caused petcoke to be released into the air in and around Plaintiffs' and Class members' properties and deposited onto the properties of Plaintiffs and Class members.

**Answer:** The allegations of paragraph 75 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 75 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 75 regarding BP or directed to other Defendants, and therefore deny them. Any remaining allegations in paragraph 75, as well as any wrongdoing, are denied.

76. BP knew or reasonably should have known that the Storage/Distribution Defendants were not taking, and would not take, reasonable and adequate measures to ensure that petcoke being stored at the Storage Facilities would not migrate into surrounding communities and contaminate the properties of Plaintiffs and Class members.

**Answer:** The allegations of paragraph 76 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 76 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 76 regarding BP or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 76, as well as any wrongdoing, are denied.

77. BP is and has been aware of the Storage/Distribution Defendants' failure to reasonably secure the petcoke at the Storage Facilities, resulting in petcoke being blown onto and contaminating and invading property owned by Plaintiffs and the other Class members.

**Answer:** The allegations of paragraph 77 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 77 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 77 regarding BP or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 77, as well as any wrongdoing, are denied.

78. The invasion and contamination was substantial and unreasonable, as the petcoke coated and contaminated Plaintiffs' and the other Class members' homes, yards, and other properties, and polluted the air supply in and around such properties. The contaminations and invasions of Plaintiffs' and the other Class members' properties were the direct and foreseeable result of BP's actions and inactions.

**Answer:** The allegations of paragraph 78 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 78 contains no allegations directed to KCBX or Koch Carbon. Paragraph 78 also states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 78 regarding BP or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 78, as well as any wrongdoing, are denied.

79. BP knew or reasonably should have known that the failure to implement reasonable and adequate containment measures would result in petcoke contaminating nearby communities.

**Answer:** The allegations of paragraph 79 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 79 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 79 regarding BP or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 79, as well as any wrongdoing, are denied.

80. Plaintiffs and the Class have suffered injury as a result of BP's actions and inactions, because the value of Plaintiffs' and Class members' property has been diminished, the migration of petcoke from the Storage Facilities has interfered with Plaintiffs' and Class members' reasonable use and enjoyment of their property, and Plaintiffs and Class members have been required to expend time, effort, and monies removing petcoke from their property.

**Answer:** The allegations of paragraph 80 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 80 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 80 regarding Plaintiffs and Class members or BP, or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 80, as well as any wrongdoing, are denied.

81. BP's unlawful conduct was perpetrated with a reckless and outrageous indifference to the high risk of harm posed by such conduct and with a conscious indifference to the rights and safety of Plaintiffs and the other Class members.

**Answer:** The allegations of paragraph 81 relate to a party and claim that have been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 81 contains no allegations directed to KCBX or Koch Carbon. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 81 regarding BP, and therefore deny them.

### COUNT III - ABNORMALLY DANGEROUS ACTIVITY

### (Against All Defendants)

82. Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

83. The uncovered distribution and storage of petcoke in an area that is regularly subject to moderate to high winds and in close proximity to densely-populated neighborhoods constitutes an abnormally dangerous activity.

39

**Answer:** The allegations of paragraph 83 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 83 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 83, and any wrongdoing.

84. A high risk of harm to persons and property arose when petcoke, a dust-like material containing hazardous metals, was stored in uncovered piles at locations regularly subject to moderate to high winds and in close proximity to densely-populated residential neighborhoods.

**Answer:** The allegations of paragraph 84 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 84 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 84, and any wrongdoing.

85. Petcoke contaminated Plaintiffs' and the other Class members' yards, homes, and other properties, because the hazardous dust-like substance polluted the air and attached to such homes, yards, and other properties, reducing the value of such properties and causing the need for such homes, yards, and other properties to be cleaned of petcoke.

**Answer:** The allegations of paragraph 85 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 85 regarding Plaintiffs and Class members, or directed to other Defendants, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 85, and any wrongdoing.

86.     It is extremely difficult, if not impossible, to eliminate the risk of harm posed by storing uncovered piles of petcoke in an area regularly subject to moderate and high winds and in close proximity to densely-populated neighborhoods.

**Answer:**    The allegations of paragraph 86 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.    Further, paragraph 86 states legal conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon deny the allegations in paragraph 86, and any wrongdoing.

87.     It was highly inappropriate and unsafe for Defendants to store uncovered piles of petcoke and/or cause uncovered piles of petcoke to be stored outside and in close proximity to Plaintiffs' and other Class members' neighborhoods.

**Answer:**    The allegations of paragraph 87 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 87 directed to other Defendants, and therefore deny them.  The remaining allegations of paragraph 87, as well as any wrongdoing, are denied.

88.     Defendants' abnormally dangerous acts of storing and/or causing uncovered piles of petcoke to be stored in close proximity to Plaintiffs' and the other Class members' neighborhoods caused actual and foreseeable damages to the properties of Plaintiffs and the other Class members, including diminishing the value of Plaintiffs' and the other Class members' homes and other properties located in affected neighborhoods, the loss of the reasonable use and enjoyment of such properties, and in the form of costs incurred to clean petcoke off of their affected properties.

**Answer:** The allegations of paragraph 88 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 88 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 88 regarding Plaintiffs and Class members, or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 88, as well as any wrongdoing, are denied.

89. Defendants' unlawful conduct was perpetrated with a reckless and outrageous indifference to the high risk of harm posed by such conduct and with a conscious indifference to the rights and safety of Plaintiffs and the other Class members.

**Answer:** The allegations of paragraph 89 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 89 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 89 directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 89, as well as any wrongdoing, are denied.

## COUNT IV – STRICT LIABILITY IN TORT

### (Against All Defendants)

90. Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

91. Defendants manufactured, sold, distributed, and marketed a product, petcoke, under circumstances and in a condition that was unreasonably dangerous in that petcoke is a

hazardous material which becomes airborne when transported and stored without being enclosed and, as such, is likely to damage Plaintiffs' and Class members' property.

**Answer:** The allegations of paragraph 91 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 91 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 91 directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 91, as well as any wrongdoing, are denied.

92. The petcoke was in this unreasonable dangerous condition when it damaged the property of Plaintiffs and Class members, including diminishing the value of Plaintiffs' and Class members' property, depriving Plaintiffs and Class members of the reasonable use and enjoyment of their property, and the ongoing costs of Plaintiffs and Class members having to clean petcoke off their property.

**Answer:** The allegations of paragraph 92 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 92 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 92 regarding Plaintiffs and Class members, or directed to other Defendants, and therefore deny them. Any remaining allegations of paragraph 92, as well as any wrongdoing, are denied.

### COUNT V – TRESPASS

### (Against Storage/Distribution Defendants)

93. Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

94. Plaintiffs and Class members owned property located within the affected areas contaminated and invaded by petcoke and coal dust from the Storage Facilities.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 94 directed to other Defendants or regarding Plaintiffs and Class members, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations of paragraph 94.

95. Petcoke and coal dust from the Storage Facilities has interfered with Plaintiffs' and Class members' reasonable use of their property and damaged Plaintiffs' and Class members' real and personal property.

**Answer:** Paragraph 95 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 95 directed to other Defendants or regarding Plaintiffs' and Class members' real and personal property, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 95.

96. As a direct and proximate result of Storage/Distribution Defendants' conduct, petcoke and coal dust has contaminated and invaded, and continues to contaminate and invade, Plaintiffs' and Class members' property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 96 directed to the other Defendants, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations of paragraph 96.

97.     Each time petcoke and coal dust from the Storage Facilities migrated onto Plaintiffs' and Class members' property a separate trespass occurred.

**Answer:**  Paragraph 97 states legal conclusions, to which no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 97 directed to other Defendants, and therefore deny them.  KCBX and Koch Carbon deny the remaining allegations in paragraph 97.

98.     Storage/Distribution Defendants' ongoing trespasses onto Plaintiffs' and Class members' property is intentional, willful and wanton, and/or negligent, and wrongful.

**Answer:**  Paragraph 98 states legal conclusions, to which no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 98 directed to the other Defendants, and therefore deny them.  KCBX and Koch Carbon deny the remaining allegations in paragraph 98.

99.     Storage/Distribution Defendants' ongoing trespasses onto Plaintiffs' and Class members' property have interfered with Plaintiffs' and Class members' use and enjoyment of their property and diminished the value of their property.

**Answer:**  Paragraph 99 states legal conclusions, to which no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 99 directed to the other Defendants, and therefore deny them.  KCBX and Koch Carbon also have insufficient knowledge to admit or deny allegations regarding the Plaintiffs' property, and therefore deny them.  KCBX and Koch Carbon deny the remaining allegations in paragraph 99.

100.    Storage/Distribution Defendants' ongoing trespasses onto Plaintiffs' and Class members' property have caused economic loss to Plaintiffs and Class members, including but not limited to reducing the value of the property and the ongoing costs of cleaning their property.

**Answer:**  Paragraph 100 states legal conclusions, to which no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 100 directed to the other Defendants, and therefore deny them.   KCBX and Koch Carbon also have insufficient knowledge to admit or deny allegations regarding the value of the property or the costs of cleaning the property, and therefore deny them.  Any remaining allegations in paragraph 100 are denied.

## COUNT VI - NEGLIGENCE

### (Against Storage/Distribution Defendants)

101.    Plaintiffs repeat and re-allege paragraphs 1 to 66 as though fully set forth herein.

**Answer:**  KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

102.    At all relevant times, Storage/Distribution Defendants had a duty to act with reasonable care in owning, operating, controlling and/or maintaining their terminals and in storing, distributing, and selling petcoke and coal dust in such a way that petcoke and coal dust would not migrate onto and contaminate Plaintiffs' and Class members' property.

**Answer:**  Paragraph 102 states legal conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 102 directed to the other

Defendants, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 102.

103. Storage/Distribution Defendants breached their duty by:

a) Failing to own, operate, maintain, and/or control the Storage Facilities in a manner that would prevent petcoke and coal dust from blowing from the Storage Facilities into the air and onto the homes, property, and businesses of Plaintiffs and Class members;

b) Failing to take adequate measures to suppress the petcoke and coal dust so as to prevent the migration of petcoke and coal dust from the Storage Facilities into the air and onto the homes, property, and businesses of Plaintiffs and Class members;

c) Failing to maintain adequate petcoke and coal dust suppression systems at the Storage Facilities;

d) Failing to adequately contain or cover the piles of petcoke and coal dust at the Storage Facilities so as to prevent petcoke and coal dust from migrating into the air and onto the homes, property, and businesses of Plaintiffs and Class members;

e) Owning, operating, controlling, and/or maintaining the Storage Facilities in an unreasonable manner;

f) Failing to remediate the damage to the homes, property, and businesses of Plaintiffs and Class members caused by petcoke and coal dust; and

g) Otherwise failing to own, operate, maintain and/or control the Storage Facilities in a reasonable manner so as to avoid damaging, diminishing the value of, and interfering with Plaintiffs' and Class members' reasonable use and enjoyment of, their homes, businesses, and property.

**Answer:** Paragraph 103 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 103 directed to the other Defendants, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 103.

104. It was foreseeable that Defendants' failure to implement and maintain reasonable and adequate measures to ensure petcoke and coal dust from the Storage Facilities was not blown

into surrounding communities would result in Plaintiffs and Class members suffering damage to their property.

**Answer:** Paragraph 104 states legal conclusions, to which no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 104 directed to the other Defendants, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 104.

105. As a direct and foreseeable result of Defendants' actions and failure to act, Plaintiffs and Class members have been damaged, as the value of Plaintiffs' and Class members' property has been reduced, and they have been deprived of the reasonable use and enjoyment of their property.

**Answer:** KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 105 directed to the other Defendants or the value of Plaintiffs' and Class members' property, and therefore deny them. To the extent that the allegations of paragraph 105 state legal conclusions, no response is required. The remaining allegations of paragraph 105 are denied.

## COUNT VII –NEGLIGENCE (WILLFUL AND WANTON)

### (Against All Defendants)

106. Plaintiffs repeat and re-allege paragraphs 1 to 66 as though fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

107.    Defendants had a duty not to consciously and deliberately disregard the known danger to Plaintiffs and Class members in marketing, distributing and storing petcoke from BP's Whiting refinery.

**Answer:**    The allegations of paragraph 107 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.    Further, paragraph 107 states legal conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 107 directed to the other Defendants, and therefore deny them.  KCBX and Koch Carbon deny the remaining allegations in paragraph 107.

108.    Notwithstanding this duty, Defendants did in fact distribute, store, and sell petcoke in conscious and deliberate disregard of petcoke's known danger to Plaintiffs and Class members and their property.

**Answer:**    The allegations of paragraph 108 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 108 directed to the other Defendants, and therefore deny them.  KCBX and Koch Carbon deny the remaining allegations in paragraph 108.

109.    This willful and wanton conduct of Defendants in conscious and deliberate disregard to the known danger to Plaintiffs and Class members was a proximate cause of the damages to Plaintiffs and Class members and their property. This includes damage to the value of Plaintiffs' and Class members' property and interfering with their reasonable use and enjoyment of their property, and the ongoing time, effort, and cost of cleaning petcoke off of their property.

**Answer:** The allegations of paragraph 109 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, paragraph 109 states legal conclusions. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 109 directed to the other Defendants, the value of Plaintiffs' and Class members' property, or expenditure of time, effort, or costs, and therefore deny them. KCBX and Koch Carbon deny the remaining allegations in paragraph 109.

## COUNT VIII – CIVIL CONSPIRACY

### (Against All Defendants)

110. Plaintiffs repeat and re-allege paragraphs 1 through 100 and 106 to 109 as if fully set forth herein.

**Answer:** KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 100 and 106 to 109 as if fully set forth herein.

111. Defendants entered into an agreement to sell, transport, and distribute petcoke in a manner that would result in petcoke migrating from the Storage Facilities into surrounding communities and contaminating the properties within such communities.

**Answer:** The allegations of paragraph 111 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 111 directed to the other Defendants, and therefore deny them. The remaining allegations of paragraph 111, as well as any wrongdoing, are denied.

112.    Each of Defendants agreed that the purpose of the scheme was to sell and distribute petcoke through storing and distributing petcoke at the Storage Facilities in close proximity to densely-populated residential communities.

**Answer:**   The allegations of paragraph 112 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 112 directed to the other Defendants, and therefore deny them.  The remaining allegations of paragraph 112, as well as any wrongdoing, are denied.

113.    Defendants participated in a scheme to commit and did, in fact, commit unlawful acts in furtherance of their agreement. The unlawful acts are described herein in Counts I–V and VII of this Consolidated Complaint and are incorporated herein by reference.

**Answer:**   The allegations of paragraph 113 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Further, paragraph 113 states legal conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 113 directed to the other Defendants, and therefore deny them.  The remaining allegations of paragraph 113, as well as any wrongdoing, are denied.

114.    As the direct and foreseeable result of Defendants' agreement, Plaintiffs and the Class have suffered injury, including diminution of value of their property and the ongoing costs of cleaning their property.

**Answer:**   The allegations of paragraph 114 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Further, paragraph 114 states legal

conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 114 regarding Plaintiffs and Class members, or directed to the other Defendants, and therefore deny them.  The remaining allegations of paragraph 114, as well as any wrongdoing, are denied.

## COUNT IX – DECLARATORY RELIEF

### (Against All Defendants)

115.    Plaintiffs repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

**Answer:**  KCBX and Koch Carbon incorporate their answers to paragraphs 1 through 66 as if fully set forth herein.

116.    There is an actual controversy between Plaintiffs and the Class on one hand, and Defendants on the other, regarding the storage, distribution, and sale of petcoke.

**Answer:**  The allegations of paragraph 116 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order.  Further, paragraph 116 states legal conclusions.  Therefore, no response is required.  To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 116 directed to the other Defendants, and therefore deny them.  The remaining allegations of paragraph 116 are denied.

117.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

**Answer:** The allegations of paragraph 117 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Further, 28 U.S.C. § 2201 speaks for itself. Therefore, no response is required.

118. Defendants handled, transported, and stored petcoke and coal dust in such a way as to cause discharge or other escape of petcoke waste and coal dust onto Plaintiffs' and the other Class members' property.

**Answer:** The allegations of paragraph 118 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon have insufficient knowledge to either admit or deny the allegations of paragraph 118 directed to the other Defendants, and therefore deny them. The remaining allegations of paragraph 118 are denied.

119. Accordingly, Plaintiffs seek a declaration (a) stating Defendants have caused the discharge of petcoke and coal dust onto Plaintiffs' and the other Class members' property, (b) stating that Defendants had and have knowledge that petcoke is abnormally dangerous, (c) stating Defendants are liable under each of the above-referenced causes of action by virtue of the complained-of-conduct, (d) requiring Defendants to take all necessary measures to prevent the discharge of petcoke and coal dust in the future, including prohibiting BP from distributing petcoke into the subject densely-populated residential community, (e) requiring Defendants to remedy all past and future petcoke and coal dust discharge, (f) stating that Defendants are liable for all appropriate damages, including punitive damages, under said causes of action, and (g) stating that Defendants are liable for all appropriate attorneys' fees and costs under said causes of action.

**Answer:** The allegations of paragraph 119 relate to a claim that has been dismissed pursuant to this Court's November 12, 2014 Order. Therefore, no response is required. To the extent that a response may be required, KCBX and Koch Carbon deny that Plaintiffs are entitled to the requested declarations.

AFFIRMATIVE DEFENSES

Without altering the burdens of proof or assuming any burden that it would not otherwise have, KCBX and Koch Carbon assert the following affirmative and other defenses upon information and belief. KCBX and Koch Carbon reserve the right to amend its answer with additional defenses as further information is obtained.

FIRST AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that the Complaint and each and every alleged cause of action therein are barred, in whole or in part, by the equitable doctrine of laches.

SECOND AFFIRMATIVE DEFENSE

The damages Plaintiffs claim to have suffered were caused by a natural occurrence.

THIRD AFFIRMATIVE DEFENSE

The complaint was filed after the time period permitted by the statute of limitations.

FOURTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that Plaintiffs are estopped by their conduct from asserting each of the causes of action upon which they seek relief.

FIFTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that the Complaint, and each and every alleged cause of action therein are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that the Complaint, and each and every alleged cause of action therein are barred, in whole or in part, because Plaintiffs consented to the conduct about which they now complain.

## SEVENTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that each purported cause of action in the Complaint, or some of the causes of action, are barred, or recovery should be reduced, pursuant to the doctrine of avoidable consequences.

## EIGHTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that each purported cause of action in the Complaint, or some of the causes of action, are barred, or recovery should be reduced, pursuant to the doctrine of assumption of risk.

## NINTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that this suit may not be properly maintained as a class action because: (1) Plaintiffs have failed to plead, and cannot establish the necessary procedural elements for class treatment; (2) a class action is not an appropriate method for the fair and efficient adjudication of the claims described in the Complaint; (3) common issues of fact or law do not predominate; to the contrary, individual issues predominate; (4) Plaintiffs' claims are not representative or typical of the claims of the putative class; (5) Plaintiffs are not proper class representatives; (6) the named Plaintiffs and alleged putative class counsel are not adequate representatives for the alleged putative class; (7) Plaintiffs cannot satisfy any of the requirements for class action treatment, and class action treatment is neither appropriate nor constitutional; (8) there is not a well-defined community of interest in the questions of law or fact affecting

Plaintiffs and the members of the alleged putative class; and (9) the alleged putative class is not ascertainable, nor are its members identifiable.

TENTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon oppose class certification and dispute the propriety of class treatment. If the Court certifies a class in this case over KCBX's and Koch Carbon's objections, then KCBX and Koch Carbon assert the affirmative defenses set forth herein against each and every member of the certified class.

ELEVENTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon allege that the adjudication of the claims of the putative class through generalized classwide proof violates KCBX's and Koch Carbon's right to trial by jury guaranteed by the United States and Illinois Constitutions.

TWELFTH AFFIRMATIVE DEFENSE

KCBX and Koch Carbon hereby adopt the affirmative defenses asserted, or asserted in the future, by other Defendants to Plaintiffs' Consolidated Class Action Complaint.

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendants as follows:

For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' Interim Co-Lead Counsel as Class Counsel to represent the Class;

a) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

b) For an order awarding damages, including punitive damages, in an amount to be determined by the Court or a jury;

c) For prejudgment interest on all amounts awarded;

56

d) For an order of restitution and all other forms of equitable monetary relief;

e) For appropriate injunctive relief, including prohibiting Defendants from distributing, storing, and transporting petcoke and coal dust in close proximity to the subject densely populated residential communities;

f) For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

g) For further relief as the Court deems appropriate.

**Answer:** KCBX and Koch Carbon deny that Plaintiffs are entitled to a judgment or any other relief as requested in their Requests for Relief.

Dated: January 29, 2015                              Respectfully submitted,

                                        */s/ Stephen A. Swedlow*
                                        Stephen A. Swedlow
                                        Quinn Emanuel Urquhart & Sullivan, LLP
                                        500 W. Madison Street, Suite 2450
                                        Chicago, Illinois 60661
                                        Tel: (312) 705-7400
                                        Fax: (312) 705-7401
                                        stephenswedlow@quinnemanuel.com

                                        *Attorney for defendants KCBX Terminals Co.*
                                        *and Koch Carbon, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen Swedlow, hereby certify that I caused a copy of the foregoing KCBX TERMINALS COMPANY AND KOCH CARBON, LLC'S ANSWER TO CONSOLIDATED CLASS ACTION COMPLAINT to be served on January 29, 2015 to all counsel of record via the Court's ECF notification system.

*/s/ Stephen A. Swedlow*
*Attorney for defendants KCBX Terminals Co.*
*and Koch Carbon, LLC*